IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GEORGE FERGUSON,
    Petitioner,

v.                                                                         Case No. 5:05cv101/LAC/MD

JAMES V. CROSBY,
    Respondent.
_____

## REPORT AND RECOMMENDATION

    Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1). Respondent has filed a response (doc. 9), including relevant portions of the state court record (doc. 10). Petitioner has replied (doc. 12). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND

    On the evening of December 27, 2001 petitioner went to the Old Dudes Motorcycle Club in Panama City Beach, Florida where a post-Christmas party was in progress. Petitioner had two handguns, a derringer and a semi-automatic, both of which he wanted to sell. He succeeded in selling the derringer. At some point the

petitioner fired several shots from the semi-automatic at a wall (six bullet holes were found in the wall), unfortunately killing a man who was outside. For purposes of this report and recommendation, the facts recited here are not in dispute.  The only real dispute at trial was whether petitioner fired the pistol intentionally or whether it went off accidentally.[1]

Petitioner was charged in an information dated January 23, 2002, which read in part:

> GEORGE FERGUSON, on or about the 27th day of December, 2001, in [Bay County, Florida], did unlawfully by act, procurement, or culpable negligence and without lawful justification kill a human being, Carl Foster, *by striking with a bullet*, and said killing was not an excusable homicide nor murder, contrary to Section 782.07, Florida Statutes.

(Doc. 10, ex. A, p. 14) (emphasis added).[2]  On July 25, 2002, just four days before the trial commenced, the state filed an amended information, which read in pertinent part:

> GEORGE FERGUSON, on or about the 27th day of December, 2001, in [Bay County, Florida], did unlawfully by act, procurement, or culpable negligence and without lawful justification kill a human being, Carl Foster, by *shooting Carl Foster with a firearm, a .380 semi-automatic pistol,* and said killing was not an excusable homicide nor murder, contrary to Section 782.07, Florida Statutes.

(Ex. A, p. 26) (emphasis added).  Thus, rather than being charged with killing Mr. Foster with a bullet, the information was amended to charge petitioner with killing Mr. Foster with a specific handgun.  However, for some reason the amended information was not in the court file when the trail began, and the state agreed to proceed only on the original information.  This agreement was not placed on the

---

[1] The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721, 724 (11th Cir. 1984).

[2] Hereafter all references to exhibits will be to doc. 10 unless noted otherwise.

record before the trial commenced, but it was memorialized during the charge conference, after the close of the presentation of evidence:

> MR. WHITE (Defense Counsel): Can I interrupt [Your Honor] for a second? When you started this conversation you mentioned, and I believe you addressed it to Ms. O'Connor, the amended information. It is my understanding when we went to trial on Monday that the amended information was not the information upon which we were going to trial. In fact, it was some indication that was withdrawn upon the assurance that the trial was based upon the information as originally filed.
>
> MS. O'CONNOR (Prosecutor): That's correct, Your Honor. When we started Monday the amended information had been provided to Mr. White and had been sent but wasn't in the court file. And I agreed with Mr. White to go forward on the original information rather than delay anything.
>
> THE COURT: Right. . . .

(Ex. B, p. 365). As will be explained below, that agreement is at the center of petitioner's efforts at post-conviction relief.

Petitioner's case was tried to a jury. Many witnesses testified in varying degrees of certainty about what happened. The state played a recording of a statement petitioner gave to law enforcement, in which he admitted having the gun, but claimed that he was "playing around" with the gun when it went off accidentally. Petitioner testified similarly (ex. B, pp. 331-360). The jury found him guilty of the primary charge, manslaughter (ex. B, p. 413), and he was sentenced to seven years imprisonment.

## PROCEDURAL HISTORY

Petitioner appealed his conviction and sentence, arguing that the court erred in denying his motion for judgment of acquittal, and in allowing the jury to read a transcript of petitioner's statement while they listened to the recording. The appellate court affirmed without written opinion (ex. F). Petitioner than filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, claiming that his

counsel was ineffective for allowing the trial to be conducted based on the amended information (ex. G, pp. 1-20).  The assistant state attorney who handled the trial responded, claiming, either erroneously or falsely,  that there had been no such agreement, but that evidence concerning use of the firearm would have been used at trial regardless of which information formed the basis of the prosecution (ex. G, pp. 87-88). Petitioner replied, accused the state of intentionally misleading the court, and pointed the court to the transcript page where the agreement quoted above had been memorialized (ex. G. pp. 93-93).  The judge who ruled on the motion was not the judge who presided at trial.  She denied the motion in a brief written order, finding only that petitioner had "failed to demonstrate error on the part of counsel and/or prejudice suffered by Defendant sufficient to satisfy the *Strickland* standard," but without discussing her reasoning  (Ex. G, p. 113).  Petitioner's appeal of the order denying his motion for post-conviction relief was unsuccessful (ex. J).  Petitioner now seeks federal habeas relief, and raises the same issue raised in the state court as his sole ground for relief.

**Standard of Review**

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C.A. § 2254 (2002).**

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

**Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"** *Lockyer,* **123 S.Ct. at 1173 (quoting** *Williams v. Taylor***, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."** *Early v. Packer***, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting** *Williams***, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.**

**If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."** *Williams,* **529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.** *Holland v. Jackson***, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam);** *cf. Bell v. Cone***, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or**

"unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUND FOR RELIEF

As noted above, petitioner contends that his attorney was ineffective in failing to object to his being tried on the amended information. He says that he was prejudiced because had he been tried based on the original information, the state would not have been allowed to introduce all the evidence concerning the firearm. The respondent says that counsel was not ineffective. He concedes that there was an agreement, as the record shows, but contends that the agreement was adhered to. Respondent also says that petitioner was not prejudiced in either event. He contends that whether petitioner was tried on the original information or the amended one is irrelevant, because the same evidence was admissible, and would have been used, in either case. Respondent says that the difference goes only to sentencing, and that counsel actually did petitioner a great service in forcing the state to trial on the original information, because had the trial been based on the

amended information, petitioner's sentence could have been enhanced for the use of a firearm.

**Clearly established federal law.**

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions,

it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

**Federal review of state court decision.**

Upon review of the record, this court cannot say that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.  The state court applied the appropriate standard - *Strickland* - and found neither deficient performance nor prejudice.  The facts here are materially distinguishable from those in *Strickland*, and the state court did not unreasonably apply the *Strickland* standard.

This case is a very simple one.  The amended information was not necessary to petitioner's prosecution, it was not necessary for the introduction of evidence concerning the use of the firearm, and it was not necessary for petitioner's ultimate conviction and sentence.  It was necessary only for the enhancement of petitioner's

sentence, and it was not used for that or for any other purpose.  Petitioner was not prosecuted based on the amended information.  He points to nothing in the record that shows that he was.  The record demonstrates that he cannot make such a showing.

First, the amended information was not read to the jury at the commencement of the trial.  At the beginning of jury selection the court told the jury simply that "Mr. Ferguson has been charged by information with the crime of manslaughter."  (Ex. A, p. 69).  After the jury was selected it was released and told to return on Wednesday of that week, but nothing was said about the charge (Tr. 118).  When the trial began, the court again informed the jury that petitioner was charged with manslaughter, and said that the elements of the crime would be explained later (ex. B, p. 4).  The court then briefed the jury on the conduct of the trial, without again mentioning the charge, and then allowed counsel to begin opening statements (ex. B, pp. 4-8).

Second, the amended information was not mentioned in the court's instructions to the jury.  The court gave Florida's standard jury instructions on manslaughter, and defined the necessary elements: that the state must prove beyond a reasonable doubt (1) that Carl Foster was dead, and (2) that the petitioner's culpable negligence caused Foster's death.  The court explained the differences between lawful and unlawful killing, defined culpable negligence, and otherwise gave the jury its instructions on reaching a verdict.  Nowhere did the court mention a firearm (ex. B, pp. 402-411).

Third, the amended information did not play any part in determining petitioner's sentence.  He was sentenced based on a conviction of manslaughter, a second degree felony, to seven years in prison, well below the minimum guideline range of 110 months (nine years, two months).  As will be discussed below, had it been otherwise, the sentence would likely have been different.

Yet petitioner fervently maintains that he was tried based on the amended information.  As proof, he argues that under the original information, which

mentioned only a bullet, all the evidence concerning his possession of a semi-automatic firearm, all the evidence about how it was fired, how many times, and in what direction, all the evidence concerning bullet paths and holes in the wall, and all the evidence showing that a firearm was used to kill Mr. Foster would not have been admissible. In his own words: "had the trial proceeded on the original information as 'agreed' upon, the overwhelming evidence that was introduced at trial about a firearm being used, would have been 'inadmissible,' solely because the use of a firearm was not alleged in the original information and therefore evidence/testimony about a firearm would have been inadmissible, causing a different verdict." (Doc, 1, p. 4-A).

Petitioner's understanding of the rules of evidence is incorrect. An information is a formal charging document, but it does not contain every relevant fact necessary to convict, only the essential allegations of when and where the crime occurred, and its basic elements. An information that uses substantially the language of the appropriate statute, or which sufficiently apprises the defendant of the charge against him, is sufficient. *Sallas v. State*, 127 so. 127 (Fla. 1929) (holding that language tracking the manslaughter statute was sufficient to apprise defendant of charge against him). The statute under which petitioner was charged reads, in part:

> The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification . . . and in such cases in which such killing shall not be excusable homicide or murder . . . is manslaughter.

Fla. Stat. § 782.07(1). The statute does not mention either bullets or firearms, or knives, automobiles or other instruments that might cause death by culpable negligence. It simply makes unlawful the killing of another without justification, where the circumstances do not constitute excusable homicide or murder. Thus, the information in this case was sufficient for prosecution whatever the instrument of death.

Case No: 5:01cv101/LAC/MD

Case 5:05-cv-00101-LC-MD   Document 14   Filed 02/13/06   Page 13 of 15

Page 13 of 15

The original information charged killing by bullet. Petitioner killed Mr. Foster with a bullet. According to his reasoning, by making reference only to a bullet in the information, the state would have been limited to proving the death was caused by a bullet, but could not have presented evidence of how the petitioner managed to introduce the bullet into Mr. Foster's body. That is totally fallacious. In *Amoros v. State*, 531 So.2d 1256 (Fla. 1988) the court held that in a murder prosecution the state had the burden of proving where the bullet in the victim's body had come from; therefore, the defendant's earlier possession of the gun that fired the bullet was relevant and admissible. The same principle applies here. The state proved that Mr. Foster died from a bullet wound, and proved that the bullet came from the firearm petitioner fired. Petitioner's argument that none of this would have been admissible had he been prosecuted under the original information is legally incorrect.

It is unfortunate that in responding to petitioner's motion for post-conviction relief, the state prosecutor mistakenly told the trial court that there had been no "agreement."[3] If she had bothered to review the entire transcript, she would have recalled the agreement and could have explained why she filed an amended information, why she then agreed that it would not be used, and why it made no difference. Nevertheless, respondent here provides a cogent explanation.

Under Florida law, in order for petitioner's sentence to qualify for a firearm enhancement, the state must allege and prove, and the jury must find, that a firearm was used. *State v. Overfelt*, 457 So.2d 1385 (Fla. 1984). Yet this jury was not asked to find whether a firearm was used. Had petitioner been prosecuted under the amended information, the jury would have been asked to make that finding. Then, under Fla. Stat. § 775.087, petitioner's second degree felony conviction would have been raised to a first degree felony conviction, with a possible life sentence. But since the firearm was not the subject of a jury finding, petitioner was not subjected to enhancement.

---

[3] Petitioner insists that by denying that there was an agreement the prosecutor attempted to mislead the trial court and proved its bad faith. The record speaks for itself, however.

*Case No: 5:01cv101/LAC/MD*

## CONCLUSION

It is obvious from a close and considered reading of petitioner's pleadings that he has failed to grasp or to accept some very basic truths about the handling of his case, specifically: <u>regardless of whether he was tried on the original information or the amended information</u>, (1) <u>everything</u> said in the prosecutor's opening statement concerning the firearm could and would have been said; (2) <u>all</u> the evidence concerning the pistol, its identity as a .380 semi-automatic, and how it was displayed and used was admissible and would have been admitted; (3) <u>all</u> the evidence concerning how many shots were fired and the paths of the bullets was admissible and would have been admitted; (4) <u>all</u> the evidence proving Mr. Foster died as the result of being shot with a bullet from petitioner's pistol was admissible and would have been admitted; (5) <u>all</u> the statements concerning the firearm made in closing argument could and would have been made; and (6) the resulting jury verdict would not have been different.

The only impact the amended information could have had was on petitioner's sentence.  But  because petitioner's lawyer effectively forced the state to proceed on the original information, petitioner was sentenced to a below-the-guidelines sentence, rather than being subjected to an enhanced sentence, and possibly a life sentence. Petitioner should be thanking his lawyer, not blaming him. As respondent states, what counsel did was "effective lawyering, not deficient performance." (Doc. 9, p. 17).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner has not shown that his counsel was ineffective, nor has he shown prejudice.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

**Accordingly, it is respectfully RECOMMENDED** that the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in the case *of State of Florida v. George Ferguson,* in the Circuit Court of Escambia County, Florida, case no. 01-3209H, be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

**At Pensacola, Florida this 13th day of February, 2006.**

/s/ *Miles Davis*
      **MILES DAVIS**
      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**